And the panel will hear from us in due course. The next case on our... I'll wait till council. Okay, the next case on the argument calendar is P Poe versus... Let's see. ...versus Saunders and University of Washington. Okay, this case is set for 20 minutes per side. So, council for appellate will start us off. But if you'd like to make a rebuttal, please try to not use up all your time. Thank you, Your Honor. May it please the Court, Peter Hawks of the Angeli Law Group on behalf of appellants. And I will do my best to reserve three minutes for rebuttal. In this case, plaintiffs seek to enjoin the disclosure of the fact that they are public officials. That is simply not highly sensitive or intimate personal information. It implicates the constitutional right to privacy. And for that reason, the district court's preliminary injunction should be reversed. The informational privacy analysis must begin with what Nelson V. Nassa describes as the threshold question of whether the information at issue is sufficiently personal to invoke the constitutional right to privacy. And to answer that question, the inquiry there depends on the nature or type of the information involved. That's what Nelson tells us. That's what Garland tells us. And specifically, what Doe v. Bonta tells us is that the information must be of a highly sensitive or intimate personal nature. What Doe v. Bonta also tells us is that mere identifying information doesn't cut it. What Bonta says is that identifying information, I quote, is not intimate personal information that would implicate the right to privacy under our decisions. So for one's identity to be subject to the right to privacy has got to be associated with something else, something private, something highly sensitive and intimately personal. And the fact of one's service on an IACUC at a public university simply can't qualify. And to reach that conclusion, we really need to look no further in this court's decision two years ago in the predecessor litigation in the Sullivan case. In that case, the court said that membership on the UW IACUC is not in pursuit of the plaintiff's private interests. Rather, the IACUC serves an official purpose and a public function. And when members are serving on the IACUC, they are performing, quote, official duties. So this is the exact opposite of personal information, much less highly sensitive or intimate personal information. And what the U.S. Supreme Court said in the Nixon case is that public officials have no expectation of privacy in matters relating to their official conduct. So that really ends the inquiry right there, and we need go no further. The district court, however, in its rationale, said, essentially conceded that the fact of one's IACUC service is not itself personal information, but it said, aha, but its disclosure could have implications for the personal lives of the IACUC members because they could potentially be subject to harassment at home or in their personal lives if that information were to become public. And that rationale simply can't be squared with either U.S. Supreme Court or Ninth Circuit precedent. So what if the situation involves someone, an informant or maybe someone who cooperated in a criminal investigation that's long since concluded and someone wants the name of that person who cooperated, that person has beliefs that his or her life might be in jeopardy if her name is exposed? That might be protected from disclosure, but it wouldn't be under the constitutional right to informational privacy. That's potentially a personal security and bodily integrity argument, which is another issue that plaintiffs raised in this case, but that the district court didn't reach. If disclosure of that information could actually put them at serious risk of bodily harm or death, then potentially, yeah, that could be a basis to withhold that information. But there's nothing in the record here that suggests anything approaching that level of threat to IACUC members. And for the members here, the record shows at least one member got a text saying we have something special planned for you. I think that same person received magazines with images of guns, which I think people will find unnerving unless they also subscribe to Zolder or Fortune or something. It's a little bit unnerving. Probably doesn't amount to true threats. So, I mean, do they really have any remedy? They just have to kind of brush it off and say it's creepy, intimidating, but it's within their rights? One correction, Your Honor, is that was not an IACUC member. That was the director of the Washington National Primate Research Center who's not a member of the UW IACUC as a very prominent figure in the animal experimentation industry. But to your point, yes, I would agree that none of that amounts to a true threat. And the fact is when you are engaged in a public function as a public official, sometimes the things that you're engaged in are going to generate controversy and sometimes it's going to result in you being exposed to speech that makes you uncomfortable or that you don't like. But that does not give you a right to perform your government function in secret and anonymously and to deprive the people at the public of the right to know who it is who's discharging this official function on behalf of the government. Counsel, I have a question for you. When the committee of the university has its meetings, do they ever see names of committee members specified? I believe what the record reflects is that at the meetings, which are now generally conducted over Zoom or remotely, that they are identified by initials rather than their names at the meetings. So a person, a member of the public who's attending the meeting via Zoom would not know who those people were. They would see them there. They would see their initials, but they would not know the identities of the individuals who are there. They're on camera, though. Well, sometimes. Sometimes they turn their cameras off. So again, going back to the point that why the district court's rationale cannot be the basis for saying that the right to privacy is implicated here. First of all, it can't be squared with the cases with Nelson, with Garland, with Bonta that say it's the nature or type of information that makes it private, that it has to be of a highly sensitive or intimate personal nature. And in fact, this same argument was actually raised in the Bonta case. If you look back at the district court opinion in Bonta, this was the plaintiff's argument. Their argument was that they feared that nongovernment researchers may publicly identify them as firearms owners, which in turn might subject them to harassment, threats of physical violence, and the theft of their firearms. It was the exact same argument that plaintiffs are making here. And this court, in deciding Bonta, didn't even engage with that. It says you don't even get there because the information that you are trying to keep private is simply not private information. It's not highly sensitive or intimate personal information. And second, it's again inconsistent with all of the cases out there where arguments that there's going to be some sort of personal impact on me from the disclosure of this otherwise non-personal information, that can't be enough to invoke the right to privacy. I mean, that's the Paul V. Davis case in the U.S. Supreme Court, where the fact that someone had been arrested is simply not private information, regardless of the fact that it might have an impact on that person's reputation. Similarly, in Doe v. Garland, the fact of a criminal conviction is not private information. We don't even get to the point of talking about what is the impact of that on me if that's publicly disclosed. The McClatchy Newspapers case, again, that was a public official who was accused in a court filing of having taken a bribe and objected to the unredaction of that court filing because it would identify him as having been accused of that. And the court said, that's, you know, you don't have a right. Your protection of your reputation is not part of what the right to privacy protects. You can't bootstrap the effect of the disclosure of the information into the right itself. How should we read N. Ray Crawford? You know, that's the one about Social Security numbers, I believe. And clearly, Social Security numbers are generally considered confidential. I think it's totally different from names. On the other hand, that opinion does have language about it's more of a practical effect related, that if you disclose Social Security numbers, it could have catastrophic effects or fraud, et cetera. So in some ways, it seems to consider kind of the real-world impact of disclosure as opposed to more abstract, is it something public or private? How should we read that case? Well, much of that discussion about the impact is in the context of weighing the interest in nondisclosure, the privacy interest in nondisclosure against the government interest in disclosure, where I think those considerations do come into play. But in addition, I mean, Social Security numbers are kind of a sui generis category in a way. I mean, in a literal sense, it is financial information, right? I mean, it's literally your account number for a pension plan, albeit one that's managed by the government, but it is financial information. And moreover, it has come to be used as essentially a skeleton key to get access to other financial information that one has with private institutions as well. I mean, it's more akin in that way to a password or something like that, which gives it a different character than the fact that one is serving as a public official. I mean, there we're talking about, when we're talking about the effects of that, we're talking about the effects of third-party reactions to conduct that someone has engaged in in a public role. We're not talking about use of the information in order to gain access to other private information that they otherwise would not be able to access. So the Social Security, Crawford, I think, can stand alone. And I think if we were to read Crawford as saying, we're going to consider the effect of the disclosure of the information on the question of whether the information is private in the first place, then it becomes very difficult to make sense of most of the other cases of this Court and of U.S. Supreme Court precedent. How do you make sense of Bonta? How do you make sense of Garland? I don't see how those cases can be reconciled with a reading of Crawford that says, we're going to simply look at, you know, whatever the secondary effects are of disclosure of this information in deciding whether it's subject to the right to privacy in the first place. And that argument, particularly in the context of public officials, would prove entirely too much because it would open the door to any public official who is involved in any public policy matter that is subject to controversy, being able to go into court and say, I should be able to do my job in secret and anonymously because I'm worried that someone who disagrees with me on this public policy issue is going to harass me. And not only is that troubling from a public policy perspective of having open government, but then the right to privacy would ebb and flow and depend on the degree of public vitriol about a particular issue. I mean, let's take election integrity, for example, which has been a very hot-button issue in the last few years. Ten years ago, it was a completely non-controversial and sleepy issue. So do election officials now have a constitutional right to serve anonymously that they didn't have ten years ago? It can't be the case that the right to privacy can depend on the political winds that happen to be blowing at a particular moment in time. Where do these committee members fall in? I mean, let's use just a slightly different context, say like New York Times' V. Sullivan public figure, and people in public service. I think everyone here on the bench would be considered a public figure. You could say very nasty things, false things, and that's fine. Probably can't say that someone who works, say, in the Social Security Administration who is somewhere in the back office, somewhere even though they're in public service, probably not a public figure. Where do these members of this committee fit in? I mean, for purposes of defamation analysis, whether they would be subject to— Yeah, I'm just using that as an analogy, but where in that spectrum would they fit in? Well, I mean, they're obviously not elected officials, right? But they're also not somebody who simply works in a back office, right? This committee holds public meetings and makes policies in a public way. So I would put them somewhere on the spectrum between those two extremes. So turning to the application of the balancing test, and even if we were to assume that the fact that the plaintiffs are public officials could be subject to the right to informational privacy, the court really messed up in applying that balancing test because the court completely ignored the best evidence of what is likely to happen if this information is disclosed, and that's what has actually happened, right? It's undisputed in the record that all of the then-current members of the UWI Cooks identities were disclosed to PETA in 2021, and there's nothing in the record reflecting that there's been any adverse consequences to them because of that. Also in the record is the fact that we have at least eight members of the UWI Cook who have themselves, in a public way—it's available there on the Internet right now— disclosed their UWI Cook membership. Also in the record is that IACUC members' identities have been disclosed to NARN, and beyond UW, also in the record is the fact that there are at least 85 institutions out there who publicly put their IACUC membership rosters online. And again, we're talking about hundreds and hundreds and hundreds of IACUC members at this point, and there's not a single shred of evidence. There's not—the plaintiffs could not come up with a single example of any one of those people being threatened or harassed as a result of their IACUC membership. And the court—the district court just completely ignored that evidence. Instead, it focused on anecdotal hearsay evidence concerning prominent— some would say notorious figures in the animal experimentation world that are not IACUC members. I mean, it's just simply not comparable. It can't be that just because they are in the same general area as IACUC members that what happened to them is likely to happen to IACUC members. I mean, there are thousands and thousands of IACUC members out there. And despite that—and many hundreds of them have been disclosed, including dozens of members of the UW IACUC, and there's not a shred of evidence that any of them have ever been harassed or threatened as a result of their IACUC membership. What is in the record is that there's sometimes caustic— arguably caustic rhetoric at IACUC meetings, but, of course, that's completely protected by the First Amendment. Also in the record is that there was picketing outside the homes of some prominent figures at UW Animal Experimentation, not IACUC members, which was an error, a clear error that the district court made in finding that there were. So that—the likelihood of any actual harm coming to plaintiffs is on that record just exceedingly low, while on the other end of the scales, the public interest is exceedingly high. I mean, not only is there an inherent public interest in knowing who the public officials who are discharging a public function are, but specifically in the context of an IACUC, there's a strong public interest in being assured that the general community interests outside of the animal experimentation community are being represented, and if we don't know who those people are, there's no way to assure that that's happening. And, counsel, did you want to save a little time? Yes, I'll reserve the last few minutes. Thank you. Thank you. Okay, we'll hear from an appellee. Good morning. May it please the Court, Darwin Roberts for the plaintiffs' appellees, that is, the individual volunteer committee members who continue to seek relief from the courts for the unwarranted and undeserved harassment that's likely to occur if their identities are disclosed to the followers of Mr. Hawks' clients. Now, I would like to discuss the standard of review, but before that, I would like, Your Honor, if you don't mind, to go back to one of your points that you raised about Garland and Crawford and the scope of this... Excuse me. Let me back up. The review that takes place and whether PETA's articulation of the applicable test is correct. As I understand it, what PETA is articulating is that if an item of information, ex ante, does not appear to be an intimate, personal item of information, then the court never proceeds to conduct the balancing test as to whether that information is protectable and should be released. And, Your Honors, that is directly inconsistent with the language of Crawford. Well, how about Bonta? I mean, isn't that what Bonta says? Yeah, but, Your Honor, I believe Bonta, unfortunately, glossed over the applicable test. I'd call the court's attention to a particular passage from Crawford. Just to be clear, before you go on, do we have to, as a three-judge panel, somehow disavow Bonta in order for you to prevail? Is that what you're going to tell us? Go ahead. No, Your Honor. I don't think the court has to disavow Bonta because Bonta was, in effect, applying Crawford. I mean, the Bonta court can't overrule Crawford any more than this panel can overrule Bonta. And the issue that's brought to a head here about is there a threshold test for the information, it was squarely addressed in Crawford. This is at pages 959 to 960 of Crawford, and Crawford acknowledges, specifically acknowledges, the fact that there are categories of information that Crawford calls inherently sensitive or intimate information. This is right at the top of page 60, and Crawford says, firm's circumstance, firm was the petitioner in Crawford, is different from the individual, for example, who is required to disclose her HIV status, sexual orientation, or genetic makeup. Unlike these personal facts, a SSN is not inherently sensitive or intimate information, and its disclosure does not lead directly to injury, embarrassment, or stigma. That's precisely the inquiry that PETA claims ends the inquiry, right? But Crawford doesn't say that. Crawford says firm's complaint is the disclosure of his SSN makes him vulnerable to being a victim of certain crimes. While this surely, surely implicates firm's informational privacy interests, it does not appear to constitute a more serious invasion. Nonetheless, despite the fact of the SSN not being the kind of intimate information that's got an inherent privacy interest associated with it, the Crawford court proceeded to the balancing inquiry. And, Your Honors, that's fatal to PETA's construction of the test. Now, Bonta, the reasoning in Bonta, glossed over that process a little bit because Bonta was saying, well, this case is like the other cases in which we found it isn't sufficient, but it's also distinguishable on its facts, right? Bonta, the district court opinion in Bonta, which counsel cited to, said, well, yeah, there's a claim of threats from the possible disclosure of this information, but not only was there no particular likelihood of threats shown in that case, but also that there was protection from disclosure, which the Bonta court also cited as a reason. And that pervades the opinions on this issue. All of the opinions always look at the extent to which there's a likelihood from disclosure. Here, there's not a likelihood of disclosure. There's a certainty of disclosure. But Bonta states that biographical data does not implicate the right to informational privacy. It doesn't then go on to conduct a balancing test about that data. So I just don't see how you get around that here. It says innocuous biographical data doesn't implicate the balancing test. But what you see if you really look at these courts is you have to ask what's innocuous biographical data, and that depends on the context inquiry. You can't know what's innocuous without knowing. So where does Bonta say that? Bonta cites, for that proposition, Bonta cites, I think it's Acey v. Cortez. And again, Bonta is summarizing the holdings of other cases. Bonta says, right, it consists largely of biographical data which we have recently observed does not implicate the right to informational privacy, see Acey by and through Park v. Cortez. And if you look at what Acey says about it, Acey is talking about what's in California juvenile records. And the court says, well, you know, at some point there may be relatively innocuous biographical data in the records. But that's not the same thing, Your Honor, as this court holding biographical data for all time and for all purposes is always innocuous. To cite another example, Your Honor, the Doe v. County of San Diego, which was a district court opinion, but was an opinion in which this test was applied, and it was held that the biographical information of a minor victim of a sexual assault that occurred in a public place had a protectable informational privacy interest in her basic biographical information, even though there was nothing about that sexual assault because it occurred in a public place that was inherently objectionable, that itself would warrant a privacy protection. If we can go back to Crawford, and that opinion is a little bit murky, and that's why I asked that question to your friend on the other side. But then if you go to page 958 of that opinion, the court does say, unlike a telephone number or even a name, an individual's SSN serves as a unique identifier that cannot be changed and is not generally disclosed by individuals to the public. So Crawford itself seems to distinguish a name from a Social Security number. Admittedly, then, it seems to do more of a practical effects analysis of what would happen if the SSN is disclosed. It's a little bit murky, even Crawford itself. I think that's right, Your Honor. But if you also look, Crawford points out that it's the combination of the Social Security number with the other identifying information, the name and the address. Because if you just had a Social Security number and you didn't know anything else about it, it would be pretty difficult to perpetrate a fraud with it, right? It's only because it links up to something. And here, that was essentially the district court's conclusion, too. In this case, Your Honor, in either iteration, including the prior appeal that Judge Gould heard last year, we've never asserted that the plaintiff's names per se are exempt from disclosure. If PETA were to file a public records request with the University of Washington asking generically to identify everyone working in science, for example, they'd get the plaintiff's names. What we're saying is protectable is the plaintiff's names specifically in association with their service on the IACUC due to the threats likely to be directed at them as a result of the service and the likelihood that they've shown of that based on the harassment perpetrated by PETA's followers, specifically at Dr. Christine Lattin, at Dr. Michelle Basso, and Dr. Jane Sullivan, which is likely to result if the names and the identities of the other members are then disclosed. Assume for argument's sake that we agree with your friend on the other side that the two-step process is the test, that you first have to ask whether the information itself and the abstract is something private. Can you prevail under that test? I think we can because, Your Honor, this isn't based on a subjective expectation of privacy. I mean, the federal government has set up a system through policy and regulation in which there's a federal expectation of confidentiality in this information. So that takes it from the realm of a subjective fear on behalf of the individuals and moves it into an inquiry where looking at the totality of the circumstances is appropriate. These aren't just purely private citizens. I mean, they're entering the public arena of sorts. Maybe they're not elected officials, but maybe you can say no good deed goes unpunished, but they are playing a role in public policy a little bit, and with that comes some criticism, maybe even harsh and maybe creepy, maybe unbecoming. But, you know, we live in a country where people can do that. And several answers to that, Your Honor, if you don't mind. First of all, as the Court correctly noted, the meetings and the actions of the committee are already completely transparent to the public. I mean, they have them online for that reason. At every meeting there's a public comment period in which people can sharply criticize the conduct of the University of Washington or animal research if they want to, and they do. We've noted in the record a number of examples of the things that people say in opposition to the animal research. That won't change. The public still has the opportunity to address these people who, again, are a compliance committee. I believe it's incorrect to characterize them as a policymaking body. And also, before the Court were to hold that these people are, quote-unquote, government officials of the kind suggested by PETA, I mean, comparing them to Nixon, President Nixon in the Nixon case, we distinguish that strongly in the brief, but I believe it's just a completely inapt analogy. I take it that you think it's a pretext why they want the name, but assuming, you know, just accept on face value they want the names to make sure that they're statutorily qualified to serve in the committee. I mean, is there any other way they could verify that without getting the names? An interesting aspect of that, Your Honor, is that this litigation has been going on for three years, and there's been no indication, despite every single one of these meetings being in public, that anything untoward is going on. I mean, I know PETA complains about the animal welfare standards at the UW. The UW's position is that PETA's incorrect in those complaints and that PETA exaggerates and misstates what's going on. So I think, Your Honor, that undermines the suggestion that it's necessary for PETA to get this information to check. And, in fact, if you look at the statement that we quoted on the last page of our brief, which was something that PETA put in their briefing in the previous Sullivan appeal, where PETA says what the plaintiffs are really trying to do here is prevent people who disagree with them from speaking to them outside of the context of the IACUC meeting. And that's the reason, Your Honor, why all the evidence of all the external harassment that PETA essentially calls forth and encourages its individual anonymous followers to undertake, that's why it's so important, because once it's out there, it can't be undone.  Going back to the public official argument for a minute, I'd really encourage the Court to look under the hood of that argument to the extent it can. PETA is trying to take this 1987 stipulation from a previous version of the committee and say, okay, it's subject to the Open Public Meetings Act, and under the Open Public Meetings Act, everyone subject to the Open Public Meetings Act is a government official, which I do not think is the case. And I think there's also a possibility that this isn't even subject to the OPMA, other than due to the stipulation, because of the fact that it is a committee created as a federal law requirement. And there are questions under state OPMA law as to whether interstate compacts and federal committees and so forth even qualify. But it's also the case that, you know, everyone who is defined as a public official under the OPMA is not the equivalent of the President of the United States. And to your earlier question, Your Honor, about someone working, for example, in the Social Security Administration, that was raised by this court in the Sheet of V Model case, where the court distinguishes between individuals who are elected officials and individuals who are unelected public servants. And I think the members of the committee, given the entire context, are unelected public servants, not elected officials. And I think even if you came out our way, there's no danger of this parade of horribles, due respect to counsel, being applied to anonymize election officials. Because, first of all, again, there's a federal regulatory framework which allows these people to be anonymized, specifically because of all of the threats directed at them by these organizations that are trying to get the individual's names. Does the court have any questions about whether it needs to reach the constitutionality of the underlying statute? I have no questions. Your Honor, unless the court has any additional questions for me about these issues, one additional point I would make is that just as PETA has requested this court essentially reach out and make a raft of constitutional decisions as to questions that really aren't before the court, because the district court did not rule on them yet. Plaintiffs' appellees would suggest that if the court has doubts about its ability to sustain the district court's decision under Bonta, Crawford, the informational privacy line of cases, the most appropriate and restrained approach for the court here would not to issue a dispositive opinion about the applicability of the informational privacy analysis, but rather under the constitutional avoidance doctrine, which is both followed in this court. I cite, for example, United States v. Coluna, 192 F. 3rd at 1197. And by the state courts, plaintiffs pleaded this statutory exemption from disclosure. And under Washington state's PRA jurisprudence, statutory exemptions from disclosure are supposed to be construed prior to considering whether constitution-based exemptions from disclosure apply. And the case on that is Washington Federation of State Employees v. State, Volume 2, Washington Reports, 3rd, page 1 at pages 25 to 26. That case is cited by PETA at page 39 of their opening brief. I just add, Your Honor, again, and apologies to Judge Gould because you heard this last year, but just for the benefit of the court, the reason you see so many PRA cases with names of unions as plaintiffs is because the PRA is set up in such a way that the state has an extremely strong disincentive to litigate whether exemptions applies. If the state, even in good faith and with a reasonable argument, litigates the issue of whether an exemption applies, the state is liable for attorney's fees and penalties. Only third parties are not so liable under the PRA. And what that means in practical terms is that the state simply says, fine, we're going to give you the documents and gives them away without litigating. So they don't get penalties and they don't get nasty editorials written about them in the Seattle Times. The only reason we're here and we're able to address these questions and the possible scope of these exemptions is that this group of individual plaintiffs who aren't being represented by the state and who aren't an international nonprofit organization with a robust fundraising apparatus happen to be able to raise these issues in their own defense. And that's also a reason, I think, for the court to carefully consider what the scope of the exemptions should be and the extent to which it needs to dispositively rule on those. Thank you, Your Honors. Thank you, Counsel. Thank you, Your Honors. In the brief time I have left, I do want to address the language in Crawford that appears to draw a distinction between information that's inherently sensitive or intimate versus other types of private information. First of all, that discussion occurs after the court is already doing the balancing test. And secondly, as Judge Lee observed, Crawford is in some ways sort of internally inconsistent. And I think the best way to make sense of it is, you know, if what we're talking about, the category of information we're talking about is personal financial information, which I think it's fair to say a Social Security number could be considered. It's not inherently embarrassing if my personal financial information, I mean, maybe it is, maybe I should have more money than I do, but, you know, it's not inherently embarrassing or it doesn't inherently cause harm if that information is out there. But I don't think it's difficult to see how people would generally consider their personal financial information to be highly sensitive or intimate personal information. It doesn't just happen, you know, the paradigmatic examples are things like sexual history or medical information, but it's not hard to see how financial information fits in that category. And I think that's how you make sense of Crawford with the rest of the cases, as Judge Thomas observed. You can't reconcile that reading of Crawford with the court's holding in Doe v. Bonta. They just, they can't hang together. And so really the only way to reconcile that is to say, look, you first got to decide that the information qualifies for constitutional privacy protection, and then you go on to weigh the government interest in disclosure against that interest. And that's, you know, again, exactly what the court says in Nelson v. NASA. Nelson v. NASA says we don't think that the government interest in disclosure is relevant to that threshold question as they described it. So in conclusion, we ask the court to reverse. Thank you. Thank you, counsel. I want to thank the advocates again for their strong and helpful arguments to us. At this point, the PIPO case shall be submitted, and the advocates will hear from us from the panel in due course. So I thank you, and that ends our argument calendar for the day. And so the court will hereby adjourn with thanks to all. All rise.
judges: GOULD, LEE, THOMAS